UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN THOMAS McGRATH, SR.                          CIVIL ACTION

VERSUS                                            NO. 12-956

JACK STRAIN                                       SECTION "A" (2)

## REPORT AND RECOMMENDATION

Plaintiff, John Thomas McGrath, Sr., is a prisoner currently incarcerated in the St. Tammany Parish Jail in Covington, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Jack Strain. He alleges that while incarcerated in the jail in March 2012, he was unconstitutionally punished by being handcuffed to a bench for eight (8) hours. He alleges that during that time he urinated on himself because he was not allowed to use the bathroom, he was forced to clean up the mess, and his unattended personal property was stolen by other inmates. He seeks monetary damages to compensate him for his stolen property and for "public humiliation" and "modern day slavery." Record Doc. No. 1 (Complaint at ¶ IV and V).

On June 7, 2012, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Gary Hanes, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. Since that time, an answer has been filed not only on behalf of the

original defendant, Sheriff Strain, but also for four of his deputies, Mark LeBlanc, Carl Periloux, Jr., James P. Wigstrom, Jr. and Joseph Strain.  Record Doc. No. 14.

## **THE RECORD**

McGrath testified that he is currently incarcerated in the St. Tammany Parish Jail based upon a parole revocation on February 22, 2012. He stated that he had been previously convicted of bank fraud in 2009, Record Doc. No. 7 at p. 1, and subsequently paroled and that he is also awaiting trial on a new burglary charge.

As to the instant lawsuit, McGrath confirmed that he asserts two kinds of claims: (1) He was subjected to cruel and unusual punishment when deputies handcuffed him to a bench for eight (8) hours and would not allow him to use the restroom. (2) His personal property was stolen by another inmate during his eight-hour detention on the bench.

As to his first claim, McGrath testified that on or about March 1, 2012, he was waking up at about the same time that deputies were conducting a shakedown for routine security purposes in the dorm in which he was being housed.  He stated that he asked to go to the bathroom, but he was not allowed to go during the shakedown, "so me and Sgt. LeBlanc had like a confrontation, so I was cuffed to a bench." McGrath described the confrontation as follows: "Me and him just had some words. I was trying to go to the bathroom, and he escorted me out of C-500, and I was chained up to a bench."  Plaintiff could not remember the exact words he exchanged with Sgt. LeBlanc, except that he

asked Sgt. LeBlanc if he could go to the bathroom, and LeBlanc told him, "No, it was his responsibility and that I could use the bathroom when I was directed to. . . . like I couldn't use the bathroom without his permission." McGrath said he responded to Sgt. LeBlanc by telling him "that wasn't fair . . . . [and that] he should just let me use the bathroom, it wasn't that big of a deal."

Despite this admitted verbal resistance, McGrath said he complied with Sgt. LeBlanc's order to leave the dorm area for the shakedown. He conceded, however, that when first told to leave the dorm for the shakedown, he asked LeBlanc if he could go to the bathroom before leaving the dorm and then talked back to LeBlanc when he was told that he could not.

McGrath stated that Sgt. LeBlanc escorted him out of the dorm and to the bench, where deputies stood around laughing at him, "playing more of like a power game . . . like he had the authority to do what he wanted me to do. In actuality, he wasn't fair about the situation." McGrath said both of his wrists were handcuffed to an 18-inch long chain attached to the bench, where he was kept for about eight (8) hours as punishment for his verbal altercation with LeBlanc. He said he was brought back to his dorm when the deputies' eight-hour shift ended and other deputies came on duty.

McGrath said he urinated on himself while handcuffed to the bench, and that when Sgt. LeBlanc and other deputies saw him at about 2 a.m., they all laughed and made fun

of him.  He testified that LeBlanc pulled out a can of mace and told him if he did not clean up the mess he had made, he would be sprayed with the mace.  McGrath said that LeBlanc did <u>not</u> spray him with the mace; instead, one of the deputies unhooked the cuffs, gave him a mop, and McGrath cleaned up the mess within about two or three minutes, before he was handcuffed to the bench again. He stated that he was cuffed to the bench from about 10 p.m. until 5:30 or 6:00 a.m. the next morning.

McGrath complained that his placement on the bench was not "fair," but he conceded that he suffered no physical injuries while he was on the bench.

As to his second claim, McGrath testified that only a few hours before the incident, he had gone to the prison commissary, where he bought snack foods and personal hygiene items, which he then stored in an unlocked box under his bed. He stated that when he returned to the dorm after being held on the punishment bench for eight hours, all of his recently purchased items, together with his sheet, the blanket from his bunk and his extra underwear, were missing.  He testified that another inmate had stolen his property, though he did not know specifically who had done it. McGrath said he made a complaint about the theft through the jail administrative remedies procedure, but he received no response. He acknowledged that his sheet and blanket were replaced, and he repurchased his stolen clothing items. He estimated that the value of the stolen items was about $25 to $30.

McGrath said that when he returned to the dorm from the bench, he changed his clothes, but the other inmates were making fun of him and laughing at him for having urinated on himself. He claimed that the heckling by other inmates has escalated since that time.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182. The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

## II.    PUNISHMENT BENCH

McGrath claims that he was unconstitutionally punished when Sgt. LeBlanc shackled him to a bench for eight (8) hours after their verbal altercation at the beginning of a routine security shakedown. He testified that during the eight (8) hours, he was not allowed to use the bathroom, urinated on himself, was made to clean up the mess and then was laughed at and humiliated.

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Two separate but related constitutional standards concerning punishment of inmates may apply to McGrath's claim concerning his eight-hour confinement handcuffed to a bench. However, McGrath fails to state a cognizable Section 1983 claim rising to the level of a constitutional violation under either standard.

As a previously convicted prisoner incarcerated because his parole had been revoked, the Eighth Amendment standard prohibiting cruel and unusual punishment may apply. Claims by inmates who are incarcerated based upon revocation of probation must be analyzed under the legal standards applicable to convicted prisoners. Paith v. County of Wash., 394 F. App'x 858, 860 n.2 (3d Cir. 2010); Hamilton v. Lyons, 74 F.3d 99, 106 n.8 (5th Cir. 1996); Smith v. Leonard, No. G-06-0288, 2008 WL 1912804, at *4 n.4 (S.D. Tex. Apr. 28, 2008); Rogers v. Nolan County, No. 1:03-CV-0116, 2004 WL 1698202, at *3 n.3 (N.D. Tex. July 28, 2004); Martin v. Vt. Dep't of Corr., No. 1:03-CV-240, 2005 WL 1278119, at *7 n.13 (D. Vt. May 25, 2005); Guidry v. Jefferson County Detention Center, 868 F. Supp 189, 189-90 n.1 (E.D. Tx. 1994); Crawford v. Foti, 1993 WL 515760 at *4 (E.D. La. 1993) (Wynne, M.J.) (citing Rankin v. Klevenhagen, 5 F.3d 103 (5th Cir. 1993)). Thus, the Eighth Amendment standard applies to the claims McGrath makes in this case.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on convicted prisoners. "Prison conditions constitute cruel and unusual punishment if

they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" Hamilton v. Lyons, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981); citing Estelle, 429 U.S. at 103; Hutto v. Finney, 437 U.S. 678, 687 (1978)); accord Stanfield v. Gusman, No. 09-7183, 2010 WL 2133877, at *3 (E.D. La. Apr. 21, 2010) (Roby, M.J.), report and recommendation adopted, 2010 WL 2075550 (E.D. La. May 20, 2010) (McNamara, J.).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components." Davis, 157 F.3d at 1006 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303). If the court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having

committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Otherwise, "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S. Ct. at 2399. Conditions that "cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id. The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 417, 107 L. Ed. 2d 382 (1989) (footnote omitted).

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. Wilson, 501 U.S. at 303. "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows

that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n.8). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In addition, since McGrath was also incarcerated at the time of the subject incident while awaiting trial on a new burglary charge, to whatever extent that he may be considered a pretrial detainee, plaintiff's constitutional rights arise from the due process guarantees of the Fourteenth Amendment.

> [T]he Fourteenth Amendment prohibits the "imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'" . . . .
>> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the

> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua detainees.
> . . . . "[T]his test is deferential to jail rulemaking; it is in essence a rational
> basis test of the validity of jail rules." . . . . Thus, it is clearly established
> that pretrial detainees' due process rights are violated when they are
> subjected to conditions of confinement that constitute punishment which
> are not reasonably related to a legitimate governmental objective.

Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (quoting Hamilton v. Lyons, 74

F.3d 99, 103 (5th Cir.1996) (citing Bell v. Wolfish, 441 U.S. 520, 539 (1979))); Hare v.

City of Corinth, 74 F.3d 633, 646 (5th Cir. 1996)). "However, 'the Constitution is not

concerned with a de minimis level of imposition on pretrial detainees.'" Ruiz v. El Paso

Processing Cen., 299 F. App'x 369, 371 (5th Cir. 2008) (quoting Collins, 382 F.3d at

540).

"'[T]he effective management of the detention facility once the individual is

confined is a valid objective that may justify imposition of conditions and restrictions of

pretrial detention and dispel any inferences that such restrictions are intended as

punishment.'" Serton v. Sollie, No. 02-61010, 2003 WL 22849840, at *3 (5th Cir.

Dec. 2, 2003) (quoting Olgin v. Darnell, 664 F.2d 107, 109 (5th Cir. 1981)).

In this case, McGrath's own testimony establishes that he objected to and did not

immediately comply with LeBlanc's order to leave the dorm for a routine security

shakedown. By its nature, a shakedown is a surprise inspection in which inmates are

required to leave the area so that contraband may be located and confiscated. Plaintiff's

refusal immediately to do so and his verbal objections and self-described "confrontation" with Sgt. LeBlanc posed a level of defiance to the officer's attempt to execute a routine security procedure that justified some form of punishment.

Under these circumstances, plaintiff has failed to show that the actions of Sgt. LeBlanc amount to punishment not reasonably related to a legitimate governmental purpose; specifically, the maintenance of order, discipline and authority in a prison dorm setting. See Moore v. Frasier, 104 F. App'x 385, 386 (5th Cir. 2004) (requiring pretrial detainee to wear restraints during outdoor recreation did not violate Constitution when inmate failed to show that it was for punishment, rather than a legitimate objective); Blakeney v. Rusk County Sheriff, 89 F. App'x 897, 899 (5th Cir. 2004) (placing pretrial detainee in restraint chair for twenty hours did not violate Constitution); Carter v. Lowndes County, 89 F. App'x 439, 441 (5th Cir. 2004) (Because "County's policy of segregating inmates with contagious diseases served a two-fold purpose of protecting the general population and protecting infected inmates from retaliation," pretrial detainee's placement in solitary confinement served a legitimate penological purpose and was not punishment.).

The fact that McGrath was prevented from using the restroom during that time and was made to clean up his own mess while being subjected to the officers' laughter and humiliation does not rise to the level of a constitutional violation. Allegations of verbal

threats or other derogatory remarks are not cognizable under Section 1983. Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995). The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994). In this case, plaintiff's allegations of verbal abuse do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

McGrath's allegations about his one-time[2] incident of punishment, which he provoked by his failure to comply with a routine security procedure, fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

---

[2]After the Spears hearing, McGrath filed a "Statement" in which he complains about a second, June 25, 2012, incident in which he was again placed on the bench for eight (8) hours. Record Doc. No. 13. The "Statement" says that he is asking for a conference with the Warden and the sheriff concerning the incident, and there is no indication that he has complied with 42 U.S.C. § 1997(e)(a) in connection with this claim. McGrath has not been granted leave to supplement his complaint to add this allegation as a claim, Fed. R. Civ. P. 15(a), and any attempt to do so would appear to be futile for the same reasons contained in this report and recommendation. Nevertheless, since no claim concerning this newly raised June 25, 2012 incident has been permitted to be added to McGrath's complaint, this report and recommendation does not address it specifically.

In two cases, the Fifth Circuit has held that <u>virtually</u> <u>permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment. In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. <u>Id.</u> (quoting <u>Wilson</u>, 501 U.S. at 304).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively serious urination incident described by McGrath does <u>not</u> rise to the level of a constitutional violation. His condition was neither virtually

permanent nor an extreme deprivation of the type that might offend the Constitution. For all of the foregoing reasons, McGrath's claim concerning his placement on the punishment bench is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

III.    STOLEN PERSONAL PROPERTY

McGrath alleges that his personal belongings were lost, stolen or misplaced during his eight hours on the punishment bench and have never been returned to him. Construed broadly, these allegations may constitute a complaint that McGrath was deprived of his property in violation of his due process rights. However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Tex. Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a prisoner's property and due process rights are circumscribed by his custodial status. In general, the Supreme

Court has ruled that a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy.  Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Wilson v. Holt, 158 F. App'x 546, 546 (5th Cir. 2005).

More specifically, in Parratt, a state prisoner, like McGrath, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law.  The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy. Parratt, 451 U.S. at 543-44, cited in Hudson, 468 U.S. at 532.

In Hudson, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of [the prisoner's] locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search."  Hudson, 468 U.S. at 519-20.

The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons. Id. at 529. Finding that the State had provided an adequate post-deprivation remedy for the alleged destruction of plaintiff's property, the Court found no violation of his rights actionable under Section 1983. "We hold that the Fourth Amendment has no applicability to a prison cell. We hold also that, even if [the officers] intentionally destroyed [the prisoner's] property during the challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the [State] has provided [the prisoner] an adequate post-deprivation remedy." Id. at 536.

The Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Hutchinson v. Prudhomme, 79 F. App'x 54, 55 (5th Cir. 2003); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation of property alleged by McGrath in this case, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine. See, e.g., Hutchinson, 79 F. App'x at 54 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); Marshall, 741

F.2d at 764 (Louisiana law provided adequate post-deprivation remedy when inmate's "personal property was scattered about and some items were missing" from his cell); see also Odom v. St. Tammany Parish S.O., No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009) (McNamara, J.) (state law provided adequate remedy for allegations that deputies took inmate's mail, pictures, addresses for witnesses for his criminal case and copies of motions). Such dismissals are mandated, even when the plaintiff has alleged that the property deprivation violates some prison regulation or policy. See Myers v. Klevenhagen, 97 F.3d 91, 95 (5th Cir. 1996) (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994) (Inmate's Section 1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies were available.); Stewart v. Herrington, No. 5:06cv177-MTP, 2008 WL 3822597, at *3-4 (S.D. Miss. Aug. 12, 2008), adhered to on reconsideration, 2008 WL 3884394 (S.D. Miss. Aug. 14, 2008) (Inmate's allegation that prison nurse charged him twice, although he saw the doctor only once, resulting in an overcharge, was dismissed because state law provided an adequate post-deprivation remedy.).

Plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court. Because no constitutional violation has been alleged, his complaint in this court fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and must be dismissed. McGrath remains free to pursue his claim concerning his lost property in state court against any officials allegedly responsible for his lost property.

## IV. <u>NO PHYSICAL INJURY</u>

McGrath's only claims for relief are his requests for monetary compensation, including "to pay my commissary refund [for his stolen items] . . . $10,000 for public humiliation . . . [and] $20,000 for modern day slavery for cleaning the floor without incentive wages." Record Doc. No. 1 (Complaint at ¶ V). This claim is deficient under Section 1983 because McGrath testified that he suffered no "physical injury" sufficient to support his claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e): "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury." (Emphasis added). McGrath complains of unfairness and humiliation, but he does not allege physical injuries of any kind as a result of the deputies' alleged actions in this case.

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by McGrath in this case. Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001). The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193); accord Mayes v. Travis State Jail, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, McGrath admittedly suffered no physical injuries of any kind as a result of the deputies' actions. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the humiliation or other intangible injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, <u>Hutchins</u>, 512 F.3d at 197-98, McGrath has neither plead such damages nor shown any constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." <u>Allen v. Stalder</u>, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

V.     <u>NO LIABILITY OF THE SHERIFF</u>

McGrath has named Sheriff Strain as the only defendant in this case. However, he makes no claim that Sheriff Strain was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corrections Corp.</u>, 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that the Sheriff was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

24

"To hold a supervisory official liable for the acts of a subordinate, McGrath must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, McGrath must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, neither McGrath's testimony nor his written submissions in this case are adequate to state a cognizable constitutional claim against Sheriff Strain. In addition, permitting McGrath to amend his complaint to add any other individual deputy who may have participated in the incident as defendants cannot be permitted because doing so would be futile. As to futility, the Fifth Circuit has held:

> It is within the district court's discretion to deny a motion to amend if it is futile. While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the

25

amended complaint would fail to state a claim upon which relief could be granted. As these courts have done, to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).

Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) (quotations and citations omitted).

"When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation . . . ." Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985). If the amendment would offer plaintiff no avenue of redress, there is no reason to allow it. Davis v. United States, 961 F.2d 53, 57 (5th Cir. 1991). Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985). For all of the foregoing reasons, McGrath fails to state a cognizable Section 1983 claim against any individual deputy who has answered his complaint, and any attempt to add other deputies as defendants in this case would be futile.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____20th_____ day of August, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.